UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| BOARD OF TRUSTEES OF ALAMEDA COUNTY MEDICAL CENTER,<br><br>     Plaintiff,<br>  v.<br><br>COSTCO EMPLOYEE BENEFITS PROGRAM,<br><br>     Defendant.<br>_____/ | No. C 12-04609 LB<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND (2) REMANDING THE ACTION TO ALAMEDA COUNTY SUPERIOR COURT**<br><br>[Re: ECF No. 5] |

## I. INTRODUCTION

Plaintiff Board of Trustees of Alameda County Medical Center ("ACMC") provided emergency treatment to a patient who was a beneficiary of Costco Employee Benefits Program (the "Plan"), resulting in total billed charges of $56,051 for medical care and other services. Complaint, ECF No. 1, Ex. A, ¶¶ 16, 22, 26.[1] Before providing the treatment, ACMC called the Plan through its third-party administrator Aetna Life Insurance Company ("Aetna") to confirm coverage, and Aetna confirmed that the Plan would pay for medically necessary services. *Id.*, ¶ 13. After the Plan did not pay, ACMC sued the Plan in Alameda County Superior Court for (1) breach of oral contract, (2)

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

violation of California Health & Safety Code § 1371.4, and (3) quantum meruit. *Id.,* Exh. A.[2] The Plan removed the action to federal court on the basis that ACMC's claims are "completely preempted" by § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). Notice of Removal, ECF No. 1 at 1, ¶ 4. The Plan now moves to dismiss ACMC's claims because the Plan believes that the claims are "conflict preempted" under ERISA § 514(a), 29 U.S.C. § 1144(a). Upon consideration of the papers submitted, the arguments of counsel at the December 6, 2012 hearing, and the applicable legal authority, the court **DISMISSES WITH PREJUDICE** ACMC's § 1371.4 claim, **FINDS** that ACMC's breach of contract and quantum meruit claims are not completely preempted under ERISA § 502(a), and **REMANDS** this action to Alameda County Superior Court. Therefore, the court does not reach the Plan's motion to dismiss based on conflict preemption under ERISA § 514(a).

## II. BACKGROUND

The Plan is a self-funded employee welfare benefit plan sponsored by Costco Wholesale Corporation ("Costco") within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and therefore is subject to its requirements. Complaint, ECF No. 1, Exh. A, ¶ 2; Declaration of Lisa Adinolfi In Support of the Motion to Dismiss ("Adinolfi Decl."), ECF No. 5-1, ¶ 3; Adinolfi Decl. Exhibits, ECF No. 5-2, Exh. 1; *see* 29 U.S.C. § 1002(1) (defining an "employee welfare benefit plan"); 29 U.S.C. § 1003(a) (subjecting employee welfare benefit plans to ERISA's provisions). Aetna contracted with Costco to provide administrative services for the Plan. Complaint, ECF No. 1, Exh. A, ¶ 7.

ACMC alleges that Patient A.R., who is a Costco employee and a member of the Plan, came to ACMC on July 4, 2010 seeking emergency medical treatment. *Id.*, ¶¶ 8, 9. On or about the time of her admission, ACMC contacted Aetna "to verify Patient A.R.'s benefit plan eligibility and to confirm that [ACMC] would be paid for the medical services rendered." *Id.*, ¶ 13. ACMC alleges that Aetna "orally represented" that (1) Patient A.R. was an eligible member of the Plan, (2) ACMC

---

[2] At the hearing, ACMC conceded that under the circumstances of this case, its § 1371.4 claim is predicated on the beneficiary's membership in the Plan, and that the claim should be dismissed. Thus, the court dismisses it with prejudice.

"was authorized to render medically necessary services to Patient A.R.," and (3) "based on the authorization, [ACMC] would be reimbursed for the medically necessary services provided to Patient A.R." *Id*. ACMC "promised to provide and did provide medically necessary services to Patient A.R." *Id*. "Based upon such promises[,] [ACMC] and Costco, through its third party administrator Aetna, entered into an oral contract" regarding the medical care ACMC provided to Patient A.R. and the payment for it. *Id*.[3]

---

[3] The Plan asks the court to consider, in ruling on its motion to dismiss, (1) letters that Aetna wrote on July 6, 8, and 13, 2010 that purportedly "memorialized the oral authorization—and the limitations on that authorization"—and "reiterated that the authorization of services for Patient A.R. remained subject to the terms of the Plan, including any exclusions under the Plan," and (2) certain terms of the Plan. Motion to Dismiss, ECF No. 5 at 9-10 & nn.1-2 (citing letters and Plan terms found at Adinolfi Decl., ECF No. 5-2, Exhs. 1-2). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond. A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (internal citations omitted); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). Moreover, the Ninth Circuit has "extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that the district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity)).

Here, while ACMC's claims do not explicitly rely upon the terms of the Plan, it does allege Patient A.R.'s membership in it, and the court will include certain of the Plan's terms in this order to accurately describe the Plan's explanation for not paying ACMC for the medical treatment it provided to Patient A.R. However, the court will not consider the letters from Aetna that purportedly memorialized the terms of the alleged oral contract. What an oral contract's terms were is a question of fact; perhaps the letters' "memorialization" of the terms is accurate, but perhaps it is not. In this situation, where ACMC only alleges what it believes were the terms of the oral contract, *see* Complaint, ECF No. 1, Exh. A, ¶ 13, and where ACMC has explicitly disclaimed reliance on those letters, *see* Opposition, ECF No. 8 at 10 n.2 (ACMC "has based its oral contract cause of action on the oral representations not these purported confirmation letters."), the court must rely

ACMC provided medical treatment to Patient A.R., who remained at ACMC until July 12, 2010. *Id*., ¶ 9. At all relevant times, Patient A.R.'s entitlement to benefits was subject to the terms of the Plan. *See* Adinolfi Decl., ECF No. 5-1, ¶ 3; Adinolfi Decl. Exhibits, ECF No. 5-2, Exh. 1. The Plan also presents evidence showing that ACMC accepted an assignment of Patient A.R.'s benefits under the Plan. Adinolfi Decl., ECF No. 5-1, ¶¶ 5-10; Adinolfi Decl. Exhibits, ECF No. 5-2, Exhs. 3-5. ACMC timely and properly submitted the billed charges of $56,051 to Aetna. Complaint, ECF No. 1, Exh. A, ¶¶ 10, 26. Nevertheless, the Plan has failed to pay ACMC the amount due. *Id*., ¶ 11.

The Plan states that it has not paid ACMC because Patient A.R. "failed to cooperate in providing information regarding [the Plan's] subrogation rights under the terms of the Plan." Adinolfi Decl., ECF No. 5-1, ¶ 11. Under the terms of the Plan, the Plan may deny claims for benefits when a participant fails to cooperate with the Plan to provide required information regarding the Plan's subrogation rights. *See* Adinolfi Decl. at ¶ 3, Exh. 1. Specifically, the relevant section of the Costco Employee Benefits Program Summary Plan Description for Patient A.R., effective January 1, 2009, states:

> By accepting benefits under the Plan, you agree that the Plan has the rights of subrogation and reimbursement, and you agree to provide information requested by the Plan Administrator to help the Plan enforce these rights. . . . If you do not provide the required information or otherwise fail to cooperate, the Plan will deny payments related to the injury, illness or disability.

*Id*.

On July 12, 2012, ACMC filed its Complaint in Alameda County Superior Court, asserting three claims: (1) breach of oral contract, (2) violation of California Health & Safety Code § 1371.4, and (3) quantum meruit. Complaint, ECF No. 1, Exh. A, ¶¶ 12-26. On September 4, 2012, the Plan removed this matter to federal court on the ground that ACMC's claims are completely preempted by ERISA. Notice of Removal, ECF No. 1 at 1, ¶ 4. On September 11, 2012, the Plan filed a motion to dismiss ACMC's claims. Motion to Dismiss, ECF No. 5. ACMC filed an opposition, and the Plan filed a reply. Opposition, ECF No. 8; Reply, ECF No. 9. The court heard oral argument from the parties on December 6, 2012. 12/6/2012 Minute Order, ECF No. 10.

---

upon only ACMC's allegations about the oral contract's terms.

C 12-04609 LB
ORDER
4

### III. LEGAL STANDARD

**A. Rule 12(b)(6)**

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

**B. ERISA Preemption**

A state law claim may be subject to "complete preemption" or "conflict preemption" under ERISA.

C 12-04609 LB
ORDER
5

If a state law claim is subject to complete preemption under the civil enforcement provisions of ERISA § 502(a), it may be removed under 28 U.S.C. § 1441. *See* 28 U.S.C. § 1441 (defendant may remove case brought in state court if federal district courts have original jurisdiction); 28 U.S.C. § 1331 (federal district courts have original jurisdiction over claims arising under the Constitution, treaties, or laws of the United States); *Marin General Hosp., v. Modesto & Empire Traction Co.*, 581 F.3d 941, 944-46 (9th Cir. 2009).[4]

If, however, a state claim is subject only to conflict preemption under ERISA § 514(a), ERISA provides only a federal defense. *See* 29 U.S.C. § 1144(a) (relevant provisions of ERISA shall supersede state law insofar as they relate to any non-exempt ERISA employee benefit plan); *Marin General Hosp.*, 581 F.3d at 949. What this means is that with conflict preemption, a state claim is not converted into an action "arising under federal law," and removal is improper. *Metro. Life Ins. Co.*, 481 U.S. at 64; *see also Marin General Hosp.*, 581 F.3d at 945.

As the removing party, the Plan has the burden of proving that jurisdiction exists. That requires the Plan to demonstrate by a preponderance of the evidence that ACMC's state law claims are subject to complete preemption under ERISA § 502(a). *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996); *Nishimoto v. Federman-Bachrach & Assoc.*, 980 F.2d 709, 712 n.3 (9th Cir. 1990). To do this, the Plan must prove that ACMC's state law claims are encompassed in ERISA's civil enforcement scheme set forth in ERISA § 502(a) by showing the following: (1) that ACMC at some point in time could have brought its claims under ERISA § 502(a)(1)(B); and (2) there is no other independent legal duty implicated by the Plan's actions. *See Marin General Hosp.*, 518 F.3d at 946 (quoting test set forth in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

///

---

[4] In cases removed from state court, federal jurisdiction ordinarily must appear on the face of the well-pleaded complaint at the time of removal. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). Complete preemption under ERISA is an exception to this rule in that federal law displaces a plaintiff's state law claim, no matter how carefully pleaded. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052 (9th Cir. 2003).

## IV. DISCUSSION

### A. ACMC's State Law Claims Are Not Completely Preempted

As stated above, ACMC's breach of contract and quantum meruit claims are completely preempted if (1) it, at some point, could have brought the claims under ERISA § 502(a)(1)(B), and (2) there is no other independent legal duty that is implicated by the Plan's actions. *Davila*, 542 U.S. at 210.[5] As explained below, the court finds that neither prong of the *Davila* test is met.

#### 1. The First Prong of the *Davila* Test Is Not Met Because ACMC Could Not Have Brought Its Claims under ERISA § 502(a)(1)(B)

The first question the court must address is whether ACMC could have brought its breach of contract and quantum meruit claims under ERISA § 502(a)(1)(B) or not. The court finds that it could not have.

Under ERISA § 502(a)(1)(B), a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ACMC brought claims for breach of contract and quantum meruit. Throughout its motion and reply, the Plan characterizes ACMC's claims as being based on the Plan's failure to pay benefits because Patient A.R. allegedly did not comply with the Plan's terms, rather than as being based on Aetna's oral representations and the purported oral contract. *See*, *e.g.*, Motion, ECF No. 5 at 7 ("Despite its attempts to cloak its claims under state law theories, [ACMC's] claims are in fact centered on allegations that [the Plan] has wrongfully failed to pay claims for benefits allegedly due under the terms of the ERISA plan."); Reply, ECF No. 9 at 2 ("[T]his case cannot be resolved by wearing blinders to obscure the fundamental issue in the case—namely, whether the Plan's failure to reimburse ACMC pursuant to the terms of the Plan was appropriate.").

This mischaracterizes ACMC's claims. Simply put, ACMC does not allege that the Plan wrongfully failed to pay benefits under the terms of the Plan. ACMC, of course, refers to Patient

---

[5] Again, for clarity's sake, the court notes that ACMC abandoned its § 1371.4 claim at the December 6, 2012 hearing and the court has dismissed it with prejudice. Thus, this claim has no bearing on the remainder of the court's analysis.

A.R.'s membership in the Plan as a background fact, but it expresses no opinion whatsoever about the legitimacy of the Plan's decision to find that Patient A.R. did not comply with the its terms. In its breach of contact claim, for instance, ACMC does not allege that the Plan wrongfully failed to pay benefits under the terms of the Plan. *See* Complaint, ECF No. 1, Exh. A, ¶¶ 12-16. Instead, it alleges that the Plan breached the oral contract the Plan, through Aetna, made with it. *Id.*, ¶ 15. Thus, ACMC did not bring this claim "to recover benefits due to [it] under the terms of [Patient A.R.'s] plan, to enforce [its] rights under the terms of the plan, or to clarify [its] rights to future benefits under the terms of the plan." *See* ERISA § 502(a)(1)(B); *see also Blue Cross of California v. Anesthesia Care Assocs. Med. Group Inc.*, 187 F.3d 1045, 1050 (9th Cir.1999) (holding claims of medical providers against health care plan for breach of provider agreements were not completely preempted by ERISA because "the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within § 502(a)(1)(B)"). ACMC's claim for quantum meruit similarly relies upon the allegations surrounding the telephone call between ACMC and Aetna in this way. *See* Complaint, ECF No. 1, Exh. A, ¶¶ 23-26.

The Ninth Circuit's decision is *Marin General*, which also features breach of oral contract and quantum meruit claims that were brought by a medical provider, is instructive. 581 F.3d 941.[6] In that case, before providing medical services to a prospective patient, Marin General Hospital ("the Hospital") telephoned the Medical Benefits Administrators of MD, Inc., ("MBAMD") to confirm that the patient had health insurance through an ERISA plan provided by his employer, Modesto &

---

[6] At oral argument, the Plan suggested that ACMC's cannot bring both a breach of contract claim and a quantum meruit claim. Federal Rule of Civil Procedure 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 189 (3d Cir. 1999) ("[A] plaintiff may plead in the alternative, and our caselaw finds no difficulty with pairing the two claims in one complaint."); *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 117 (2d Cir. 1985) (finding plaintiff could properly submit his case on both a contract claim and a quantum meruit claim); *Bernardi v. JPMorgan Chase Bank*, No. C–11–04543 RMW, 2012 WL 33894, at *2 (N.D. Cal. Jan. 6, 2012); *Continental DIA Diamond Prods., Inc. v. Dong Young Diamond Indus. Co., Ltd.*, No. C 08-02136 SI, 2008 WL 3977703, at *4 (N.D. Cal. Aug. 26, 2008). Thus, ACMC may bring both claims in this action.

Empire Traction Co. ("Modesto"). *Id*. at 943. MBAMD was the administrator of Modesto's plan. *Id*. According to the complaint, MBAMD orally verified the patient's coverage, authorized treatment, and agreed to cover 90% of the patient's medical expenses at the Hospital. *Id*. After performing a lumbar fusion procedure on the patient, the Hospital submitted a bill to MBAMD for $178,926.54. *Id*. MBAMD paid the Hospital $46,655.54 and stated in a letter that the Hospital was not entitled to further payment. *Id*. The Hospital sent MBAMD a letter stating that "[p]er your contract this claim should be paid at 90% of total charges." *Id*. MBAMD denied that it had such a contract with the Hospital and refused to make additional payment. *Id*. at 944.

Thereafter, the Hospital filed suit in California state court against Modesto, MBAMD, and MBAMD's CEO and Chairman for breach of an implied contract, breach of an oral contract, negligent misrepresentation, quantum meruit, and estoppel. *Id*. The defendants removed the suit to federal district court on the ground that the Hospital's claims were completely preempted under ERISA § 502(a). *Id*. The district court concluded that the Hospital's claims were completely preempted. *Id*.

The Ninth Circuit reversed. *Id*. at 943. After providing a detailed summary of the law surrounding preemption under ERISA, the court applied the *Davila* test to the facts of the case. *Id*. at 944-50. With respect to the first prong, the court stated:

> The Hospital's complaint relies on California state law to allege breach of an implied contract, breach of an oral contract, negligent misrepresentation, quantum meruit, and estoppel. All of these claims arise out of the telephone conversation in which MBAMD allegedly agreed to pay 90% of the patient's hospital charges. MBAMD has already paid the Hospital part of the patient's charges. That payment was made to the Hospital in its capacity as an assignee of the patient's rights under his ERISA plan. The Hospital is now seeking additional payment, in an amount necessary to bring the total payment up to 90% of its charges.
>
> The Hospital does not contend that it is owed this additional amount because it is owed under the patient's ERISA plan. Quite the opposite. The Hospital is claiming this amount precisely because it is not owed under the patient's ERISA plan. The Hospital is contending that this additional amount is owed based on its alleged oral contract with MBAMD.
>
> The Hospital's state-law claims in this case thus are unlike those in *Davila*, where plaintiffs[, who were patients, not medical providers,] "complain[ed] only about denials of coverage promised under the terms of ERISA-regulated employee benefit plans." 542 U.S. at 211, 124 S.Ct. 2488. Plaintiffs' state-law claims for payment under the ERISA plans duplicated those that were available under § 502(a)(1)(B). Plaintiffs in *Davila* therefore could have, and should have, brought suit under §

502(a)(1)(B).

*Id*. at 947-48.  The court noted that, while the patient assigned to the Hospital any claim he had under his ERISA plan, and while, pursuant to that assignment, the Hospital was paid the money owed to the patient under the ERISA plan, the Hospital's claims did not stem from the ERISA plan. *Id*.  Therefore, the Hospital was not suing as the assignee of an ERISA plan participant or beneficiary under § 502(a)(1)(B).  *Id*.  Rather, the Hospital's claims were based on the alleged oral contract between it and MBAMD.  *Id*.

Despite the Plan's efforts, the court does not see any meaningful distinction that would take this action out from under the reasoning and holding of *Marin General*.  The Plan argues that ACMC could have brought its claims as Patient A.R.'s assignee, but, as stated above, this argument is based on a mischaracterization of ACMC's claims.[7]  Just as the Hospital did in *Marin General*, ACMC's breach of oral contract and quantum meruit claims are based on the oral representations of the administrator of an ERISA plan.  ACMC's breach of oral contract and quantum meruit claims are not based on a violation of an ERISA plan, despite the Plan's attempt to describe them as such.[8]

---

[7] ACMC argues that it is not a participant, beneficiary, employer, or fiduciary of the Plan (nor is it the Secretary of Labor acting in the capacity of a public official authorized to bring such an action), and thus it lacks standing to bring any claim under ERISA. *See* Opposition, ECF No. 8 at 11 (citing ERISA § 502(a), 29 U.S.C. § 1132(a)).  But a medical provider can be an assignee of a beneficiary and have standing. *See Misic v. Bldg. Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1378 (9th Cir. 1986) ("We conclude that Dr. Misic[ (the medical provider of a beneficiary of an ERISA plan)], as assignee of beneficiaries pursuant to assignments valid under ERISA, has standing to assert the claims of his assignors."); *Melamed v. Blue Cross of California*, CV 11-4540 PSG FFMx, 2011 WL 3585980, at *6 (C.D. Cal. Aug. 16, 2011).  Regardless, because the court finds that ACMC could not have brought its particular claims under ERISA because they are not entitled to recover benefits due under the Plan, to enforce rights under the Plan, or to clarify the right to future benefits under the Plan, the court need not address ACMC's standing argument.

[8] In its motion, the Plan cites several cases where courts have found that a plaintiff could have brought his or her state law claims under ERISA § 502(a)(1)(B), but two of these cases are unhelpful because they were brought by ERISA plan members or beneficiaries (rather than medical providers) and featured claims that the courts believed actually were based on an ERISA plan's alleged wrongful denial of benefits (rather than on, for example, a breach of an oral contract).  *See Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (participant's cause of action under Montana's Unfair Trade Practices Act sought "non-ERISA damages for what are essentially

C 12-04609 LB
ORDER
10

1    The Plan also tries to distinguish *Marin General* by saying that the Ninth Circuit held "that
2 because the [H]ospital had already received the benefits due under the ERISA plan based on the
3 assignment, the [H]ospital could not have brought an ERISA claim." Reply, ECF No. 9 at 3-4. It is
4 true that the Ninth Circuit pointed out that the Hospital in fact had been paid the amount MBAMD
5 decided was covered under the ERISA plan, but it did so only to explain why the Hospital sought the
6 particular amount of money it did: it sought the money it was owed under the oral contract
7 subtracted by the lesser amount it was already paid. As in *Marin General*, where there is a separate
8 oral contract alleged, it does not matter whether the Plan paid ACMC anything or not. It only
9 matters that the Plan, through its administrator, allegedly entered into an oral agreement to pay
10 ACMC for the medically necessary services it provided to Patient A.R., did not condition the
11 payment upon the satisfaction of the terms of the Plan (as ACMC alleges), and then did not pay for
12 them. *See Herrera v. Blue Cross of Cal., Inc.*, No. No. C 11–3107 SI, 2011 WL 4723758, at *3
13 (N.D. Cal. Oct. 7, 2011) ("[W]hat was determinative in *Marin General Hospital* was the fact that the
14 [H]ospital's claim stemmed from a non-ERISA obligation . . . .").[9]

15    For these reasons, the court finds that ACMC's claims for breach of oral contract and quantum
16 meruit could not have been brought under ERISA § 502(a)(1)(B) and therefore the first prong of the

---

claim processing causes of action"); *Parrino v. FHP, Inc.*, 146 F.3d 699, 703-04 (9th Cir. 1998) (participant's claims for breach of implied covenant of good faith and fair dealing and for civil conspiracy were "both predicated upon alleged defects in [the ERISA plan administrator's] procedures for processing health insurance claims"). The Plan also cites two other cases that are unhelpful for different reasons. *See Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 493-94 (9th Cir. 1988) (participant's claims based on delay in payment, mishandling of their insurance claim, and reimbursement of transportation costs were actually claims for improper processing and preempted under ERISA § 514(a); court did not discuss preemption under ERISA § 502(a)(1)(B)); *Spring E.R. LLC v. Aetna Life Ins. Co.*, CIV. A. H-09-2001, 2010 WL 598748, at *5 (S.D. Tex. Feb. 17, 2010) (while the court found that the plaintiff medical provider had standing to bring an ERISA claim because it was plan members' assignee, it simply assumed, and did not analyze, whether the plaintiff brought its claims to recover benefits due to under the plan, to enforce rights under the plan, or to clarify the right to future benefits under the plan).

[9] Of course, it may turn out that Aetna did condition the payment upon the satisfaction of the terms of the Plan, but that is matter for summary judgment. At this stage, though, the court must rely upon ACMC's allegation that Aetna did not do so.

C 12-04609 LB
ORDER
11

1  *Davila* test is not met. Because the *Davila* test requires that both prongs be met, this failure means
2  that ACMC's claims are not completely preempted. Nevertheless, in the interest of completeness,
3  the court will discuss the second prong of the *Davila* test below.

4  **2. The Second Prong of the *Davila* Test Is Not Met Because Other Independent Legal
5  Duties Are Implicated by the Plan's Actions**

6  The second prong of the *Davila* test is not met "where there is no other independent legal duty
7  that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210. State law legal duties are not
8  independent of ERISA where "interpretation of the terms of [the] benefit plan forms an essential
9  part" of the claim, and legal liability can exist "only because of [the] administration of
10 ERISA-regulated benefit plans." *Id*. at 211.

11 This prong is met for many of the same reasons discussed above. ACMC's breach of oral
12 contract and quantum meruit claims are based on Aetna's oral representations, not on the Plan's
13 denial of benefits under its terms, and so these claims are based on legal duties other than under
14 ERISA. *See Marin General*, 581 F.3d at 950 (finding the *Davila* test's second prong was not met
15 because the Hospital alleged that MBAMD entered into an independent oral contract during a
16 telephone call and the Hospital's various state-law claims all arose out of what was allegedly said
17 during that call).

18 Accordingly, the court finds that ACMC's claims for breach of oral contract and quantum meruit
19 implicate legal duties independent of ERISA. Therefore, the second prong of the *Davila* test is not
20 met. Because neither prong of the *Davila* test was met—and thus ACMC's state law claims are not
21 completely preempted—there is no federal question subject matter jurisdiction. *See Marin General*,
22 581 F.3d at 943 ("Because the claims are not completely preempted under § 502(a)(1)(B), there is
23 not federal question subject matter jurisdiction in federal court."). And, the Plan's "defense of
24 conflict preemption under § 514(a) does not provide a basis for federal question jurisdiction under
25 either § 1331(a) or § 1441(a)." *Id*. at 949. Therefore, removal was improper, and the action must be
26 remanded to Alameda County Superior Court.

27 **B. The Court Does Not Reach ACMC's Motion to Dismiss Based on Conflict Preemption**
28 Because this court lacks subject-matter jurisdiction, the court does not reach the Plan's motion to

1 dismiss ACMC's claims based on conflict preemption under ERISA § 514. The Plan may, of
2 course, still make its conflict preemption argument in state court. *See id*. ("Defendants are free to
3 assert in state court a defense of conflict preemption under § 514(a), but they cannot rely on that
4 defense to establish federal question jurisdiction.").

## V. CONCLUSION

Based on the foregoing, **GRANTS IN PART** and **DENIES IN PART** the Plan's motion. Specifically, the court **DISMISSES WITH PREJUDICE** ACMC's California Heath & Safety Code § 1371.4 claim, and **FINDS** that ACMC's breach of contract and quantum meruit claims are not completely preempted under ERISA § 502(a)(1)(B). Therefore, the court **REMANDS** the action to the Alameda County Superior Court. The court does not reach the Plan's motion to dismiss based on conflict preemption under ERISA § 514(a).

This disposes of ECF No. 5. The clerk of the court is directed to close the file.

**IT IS SO ORDERED.**

Dated: December 12, 2012

_____
LAUREL BEELER
United States Magistrate Judge